# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **A.L. and J.L.**

**No. 16-1232** (Kanawha County 15-JA-159 & 15-JA-160)

**FILED**

**May 22, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother C.W., by counsel Sandra K. Bullman, appeals the Circuit Court of Kanawha County's November 29, 2016, order terminating her parental rights to A.L. and J.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Sharon K. Childers, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights and failing to order post-termination visitation.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2015, the DHHR filed an abuse and neglect petition against the parents that alleged physical abuse in the father's home. At the time, A.L. lived with the father and the father's girlfriend, while J.L. lived with petitioner. The DHHR alleged that the father's girlfriend strangled A.L. The petition also alleged that A.L. had dental work that was neglected. Later, the DHHR filed an amended petition that included specific allegations against petitioner. According to the DHHR, then fifteen-year-old J.L. was truant and regularly abused marijuana. The amended petition further alleged that J.L. was diagnosed with mental retardation, oppositional defiant disorder, mood disorder, and attention deficit hyperactivity disorder. According to the amended petition, J.L.'s school records indicated disruptive behavior since the age of seven without any evidence of treatment to address his behavior. Finally, the DHHR alleged that the parents failed to support the children financially and failed to provide them with adequate food, clothing, supervision, and housing, as petitioner, J.L., and the maternal grandparents all shared one bedroom in the home.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

In November of 2015, child J.L. accompanied the father to visit A.L. at the shelter where he was placed. According to the DHHR, child J.L. attempted to engage another child at the shelter in a physical altercation. After the father attempted to prevent an altercation, J.L. began yelling obscenities at his father and fled the scene on foot. The police were called, and the father filed a missing person's report. When staff contacted petitioner to inform her about the situation and instruct her to contact the police if J.L. came to her home, petitioner became combative and told staff she would not call the police on her son. Around this time, petitioner's service provider sent her a letter outlining the services necessary to correct the conditions of abuse and neglect in the home. Ultimately, petitioner's father informed the provider that petitioner would not meet with the provider because she had already endured enough and would not submit to services. The provider also indicated that, despite a capias issuing for child J.L., petitioner allowed him to stay at the residence without alerting authorities. Specifically, the provider indicated that petitioner was willingly allowing J.L. to miss school.

In July of 2016, the circuit court held an adjudicatory hearing, during which it found petitioner to be an abusing parent. Specifically, the circuit court found that petitioner's residence was not suitable due to the "odor from the filth inside the home" being discernable from outside the residence. The circuit court further found that petitioner had little to no involvement with A.L., aside from leaving him with his father where he endured physical abuse. The circuit court also found that petitioner failed to cooperate with law enforcement in locating child J.L., who remained missing as of the adjudicatory hearing. Petitioner did not attend this hearing, although she was represented by counsel.

In August of 2016, the circuit court held a dispositional hearing, during which the DHHR presented evidence that petitioner had complied with none of the services offered and had not corrected the conditions of abuse and neglect in the home. Despite the case persisting for over a year, petitioner failed to obtain a suitable residence. The DHHR reiterated that petitioner's current home was not suitable for the children, given that five or six people resided in a single bedroom home that was in such deplorable condition that the odor from within spread outside the residence. Again, petitioner did not attend this hearing, but was represented by counsel. Based on the evidence, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the home and terminated her parental rights.[2] The circuit court further denied petitioner post-termination visitation with the children. It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

---

[2]The parental rights of both parents to both children were terminated below. According to the DHHR, seventeen-year-old J.L. was placed in the home of his maternal grandparents while he completes a graduate equivalent diploma program. Additionally, the DHHR indicates that fourteen-year-old A.L., who is currently residing at the Hovah Hall Child Shelter due to his behavioral issues, will be transitioned into the maternal grandparents' home as well following the next scheduled permanency hearing in the circuit court. The permanency plan is for both children to remain in the home.

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the circuit court's termination of petitioner's parental rights or in its denial of post-termination visitation.

First, petitioner argues that the circuit court erred in terminating her parental rights because it failed to consider less-restrictive dispositional alternatives. According to petitioner, she did not actively abuse the children in this case. Instead, petitioner argues that she simply lacked the ability to make the child attend school. Petitioner also argues that, because of the children's advanced ages, they are not likely to be adopted. Accordingly, she argues that the DHHR should have simply obtained permanent custody of the children and left her parental rights intact. The Court, however, does not agree, as petitioner's argument on appeal ignores the fact that she abused the children by failing to provide them with appropriate food, clothing, supervision, and shelter. This was evidenced by the circuit court's findings in regard to petitioner's home and the fact that it was not suitable for the children. Moreover, petitioner ignores the fact that she was entirely noncompliant with any services below and also failed to inform the authorities of J.L.'s whereabouts after a capias was issued in regard to the child.

Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child . . . .

The circuit court made this finding in regard to petitioner, based upon her refusal to engage in any services below, in addition to her refusal to provide authorities with J.L.'s whereabouts and the unsuitable nature of the home. The circuit court also found that termination of petitioner's parental rights was necessary for the children's welfare. Pursuant to West Virginia Code § 49-4-

604(b)(6), circuit courts are directed to terminate a parent's parental rights upon such findings. We have also held as follows:

> "Termination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, W. Va.Code [§] 49-6-5 [now West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under W. Va.Code [§] 49-6-5(b) [now West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W.Va. 558, 712 S.E.2d 55 (2011). As such, it is clear that the circuit court did not err in terminating petitioner's parental rights.

Finally, the Court finds no error in the circuit court's denial of post-termination visitation in this matter. According to petitioner, because the children are older and expressed a desire to visit with her, the circuit court erred in denying petitioner post-termination visitation. Again, we do not agree. We have previously held as follows:

> "When parental rights are terminated due to neglect or abuse, the circuit court may nevertheless in appropriate cases consider whether continued visitation or other contact with the abusing parent is in the best interest of the child. Among other things, the circuit court should consider whether a close emotional bond has been established between parent and child and the child's wishes, if he or she is of appropriate maturity to make such request. The evidence must indicate that such visitation or continued contact would not be detrimental to the child's well being and would be in the child's best interest." Syl. Pt. 5, *In re Christina L.*, 194 W.Va. 446, 460 S.E.2d 692 (1995).

Syl. Pt. 11, *In re Daniel D.*, 211 W.Va. 79, 562 S.E.2d 147 (2002). The record on appeal is devoid of any evidence that continued visitation with petitioner would not be detrimental to the children's wellbeing. As outlined above, petitioner took almost no steps to correct the conditions of abuse and neglect in the home. Moreover, the evidence shows that petitioner actively assisted J.L. in avoiding detection by authorities by her refusal to contact law enforcement when he was in the home. Based upon the evidence, it is clear that continued contact with petitioner would not be in the children's best interests. As such, we find no error in the circuit court's denial of post-termination visitation below.

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 29, 2016, order is hereby affirmed.

Affirmed.

**ISSUED**: May 22, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker